Mark L. Javitch (CA SBN 323729)
Javitch Law Office
3 East 3rd Ave. Ste. 200
San Mateo, CA 94401
Telephone: (650) 781-8000
Facsimile: (650) 648-0705
mark@javitchlawoffice.com

*Attorney for Plaintiff*
and the Putative Class

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THANE CHARMAN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CAPITAL PROJECTS LLC, a Virginia limited liability company, CHRISTIAN REINARTSON, an individual, and JOHN DOE, an unknown business entity,<br><br>Defendants. | Case No.: **'22CV1201 JO   MSB**<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT**

1.  Plaintiff THANE CHARMAN ("Plaintiff") brings this Class Action Complaint and Demand for Jury Trial against Defendant CAPITAL PROJECTS LLC, ("Capital Projects") Defendant CHRISTIAN REINARTSON, ("Reinartson"), and Defendant JOHN DOE ("John Doe" or together, "Defendants") to stop their illegal practice of making unauthorized texts to people registered on the Federal Do Not Call

COMPLAINT                                1

registry ("DNC") and to obtain redress for all persons injured by their conduct. Plaintiff alleges as follows upon personal knowledge as to itself and its own acts and Capital Projects, and, as to all other matters, upon information and belief, including investigation conducted by its attorney.

## NATURE OF THE ACTION

2.  Defendant Capital Projects and Defendant Reinartson sell residential real estate. As a part of their sales efforts, Defendants sent thousands of text messages to cell phones belonging to people who had registered on the Do Not Call Registry.

3.  Defendants had not requested nor obtained consent prior to placing these texts and, therefore, are in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

4.  Congress enacted the TCPA in 1991 to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*. Congress found that these robocalls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

5.  Despite such strong legislation passed almost 30 years ago, the same problem persists.

6.  By sending the text messages at issue, Defendants violated the privacy and statutory rights of Plaintiff and the Class.

7. Plaintiff therefore seeks an injunction requiring Defendants to stop its unconsented texting, as well as an award of actual and statutory damages to the Class members, together with costs and reasonable attorneys' fees.

**PARTIES**

8. Plaintiff THANE CHARMAN ("Thane Charman") is a natural person and is a citizen of San Diego, California.

9. Defendant CAPITAL PROJECTS, LLC is a limited liability company organized and existing under the laws of the Commonwealth of Virginia, with its principal place of business at 41279 Dutton Ct., Waterford, Loudoun County, Virginia, 20197.

10. Defendant CRISTIAN REINARTSON is a resident of Washington, D.C.

11. Defendant JOHN DOE ("John Doe") is an unknown business entity.

**JURISDICTION AND VENUE**

12. This Court has federal subject matter jurisdiction under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227, which is a federal statute.

13. This Court has personal specific jurisdiction over Defendants because Defendants targeted consumers with their advertisements in California, including to Plaintiff, who resides in this district. Defendants' marketing towards residents of California is the subject of this dispute from which this lawsuit arises.

14. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because the conduct giving rise to this case, violating telephone texts received, substantially occurred in this District.

## COMMON FACTUAL ALLEGATIONS

15. Defendant Capital Projects sells residential real estate.

16. Defendant Christopher Reinartson directs all activities at Capital Projects.

17. Defendant John Doe is an unknown business entity.

18. To increase their sales of residential real estate, Capital Projects and Reinartson hired John Doe to market their company and produce leads.

19. John Doe amassed a list of phone numbers from unknown sources.

20. John Doe texted hundreds or thousands of cell phones more than once in a twelve-month period.

21. Defendants failed to ensure that John Doe was not texting people registered on the Do Not Call registry.

22. Defendants did not possess consent from Plaintiff and the Class as required prior to texting solicitations to phone numbers registered on the DNC list.

## FACTS SPECIFIC TO PLAINTIFF THANE CHARMAN

23. On June 28, 2022, Plaintiff received two texts from Defendants and/or their agent John Doe on Plaintiff's cell phone ending in 1119.

24. The caller ID displayed as 601-3592.

25. Plaintiff never consented to receive texts from Defendants. Plaintiff had no relationship with Defendants and had never requested that Defendants contact Plaintiff in any manner.

26. Plaintiff's attorney emailed Capital Projects and Mr. Reinartson requesting a copy of their Do Not Call policy, but he did not receive one in response.

## THEORIES OF LIABILITY AGAINST DEFENDANTS

27. Even if Capital Projects or Reinartson did not personally initiate the TCPA-violating texts, Defendants are liable if they took steps to cause the texts to be sent, or if the texts were sent pursuant to its actual or apparent authority, or ratification. Further, Capital Projects and Reinartson are liable for participating in a joint enterprise or acting in concert with John Doe.

## DIRECT LIABILITY UNDER THE TCPA

47. Defendants' scheme involves the use of illegal texting to promote their services.

48. John Doe has direct liability under the TCPA for texting Plaintiff's phone in violation of 47 U.S.C. 227(c).

49. Capital Projects and Reinartson are also directly liable under the TCPA for outsourcing their telemarketing to John Doe.

50. On May 9, 2013, the FCC confirmed this principle in a Declaratory Ruling holding that sellers may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

## VICARIOUS / AGENCY LIABILITY

51. The May 2013 FCC Ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Id*. at 6587 n. 107.

52. Prior to conducting discovery in this litigation, Plaintiff has no way to identify the exact part(ies) who texted his phone. It could have been Capital Projects and Reinartson or some other unknown company, John Doe.

53. However, for the purposes of TCPA liability, Plaintiff is not expected to know this information at the pleading stage.

54. The May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to

such information." *Id*. at 6592-593 (¶ 46). Moreover, evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id*. at 6593 (¶ 46).

### ACTUAL AUTHORITY

55. Defendant Capital Projects and Reinartson gave actual authority to John Doe to generate prospective customers.

56. Capital Projects and Reinartson's integration of robotexting into their sales process was so seamless that it appeared to outside parties like Plaintiff that John Doe was the telemarketing department of Capital Projects.

57. Capital Projects and Reinartson acted in concert with John Doe and has been able to enjoy the benefits of mass texting while moving the illegal activity "outside their purview."

58. John Doe had actual authority to send texts to Plaintiff on behalf of Defendants Capital Projects and Reinartson.

59. The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

COMPLAINT 7

60. In their January 4, 2008 ruling, the FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. *Id*. (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

61. More specifically, the May 2013 FCC Ruling held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing texts if the telemarketer "has apparent (if not actual) authority" to make the texts. 28 FCC Rcd at 6586 (¶ 34).

## APPARENT AUTHORITY

62. The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

28 FCC Rcd at 6592 (¶ 46).

63. Capital Projects and Reinartson authorized John Doe to generate prospective customers for them.

64. The integration of Capital Projects sales efforts with texting by John Doe was so seamless that it appeared to Plaintiff that John Doe was one and the same company with Capital Projects.

65. Plaintiff reasonably believed and relied on the fact that John Doe 1 had received permission and instructions from Capital Projects and Reinartson to advertise recruiting real estate agents.

## RATIFICATION

66. Defendant Capital Projects and Reinartson actively accepted business that originated through the illegal robotexts placed by John Doe.

67. Capital Projects and Reinartson ratified John Doe's TCPA violations by knowingly accepting the benefit of Plaintiff as a potential new customer despite the fact that the way Plaintiff were the victim of Defendants' illegal marketing scheme.

68. Capital Projects and Reinartson permitted their salespeople to solicit to prospective customers, including Plaintiff, while turning a blind eye to the illegal way in which the potential customer was identified.

69. Capital Projects and Reinartson ratified John Doe's TCPA violations by being willfully ignorant of the violations or by being aware that such knowledge was lacking.

70. The ratification by Capital Projects and Reinartson caused John Doe to have actual authority under Restatement § 4.01 cmt. b.

## JOINT ENTERPRISE

71. Capital Projects and Reinartson had a tacit agreement or approved of after the fact with John Doe for the sale of their products pursuant to John Doe's illegal texts.

72. Defendants were part of a common enterprise and had a community of interest in selling their commercial services.

73. Capital Projects and Reinartson had an equal right to control the conduct of John Doe by specifying the type of people to be texted, the questions that should be asked to prospective consumers, and how to write and execute contracts on behalf of the other Defendants.

74. Defendants had a duty to exercise due care when placing phone texts marketing their products.

75. Defendants' violation of the TCPA is negligence per se.

76. Because of Defendants' negligence, Plaintiff suffered statutory and actual damage.

77. Capital Projects, Reinartson and John Doe are jointly and severally liable for the resulting damage.

## ACTING IN CONCERT

78. Defendants were part of a common design to text consumers and then sell commercial services.

79. Capital Projects and Reinartson had a tacit understanding that John Doe was texting in violation of the TCPA.

80. Capital Projects and Reinartson knew that John Doe's conduct was a breach of duty to Plaintiff.

81. Capital Projects and Reinartson gave John Doe substantial assistance in accomplishing the tortious result, including compensating John Doe for generating customers pursuant to robotexts and giving instructions on how to represent them and what to ask the people that had been contacted.

82. Capital Projects and Reinartson furthered the tortious conduct by their cooperation with John Doe and adopted John Doe's texting and solicitation for their own benefit.

83. Defendants' conduct constitutes a breach of duty to Plaintiff.

84. Plaintiff's injury is indivisible.

85. All Defendants acted tortiously and the harm resulted from the texting by John Doe.

86. Capital Projects, Reinartson and John Doe are joint and severally liable for the resulting damage.

## CLASS ALLEGATIONS

89. **Class Definition**: Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and/or 23(b)(3) on behalf of Plaintiff and a class and subclass defined as follows:

> **Class**. All persons in the United States who: (1) from the last 4 years to the filing of this complaint (2) received at least two texts; (3) on his or her cellular telephone; (5) for the purpose of selling Defendants' products or services; (6) where Defendants did not have the recipients' express written consent prior to placing the texts.

90. The following people are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

91. **Numerosity**: The exact number of the Class members is unknown and not available to Plaintiff, but it is clear that individual joinder is impracticable. On information and belief, Defendants placed telephone texts to thousands of consumers who fall into the definition of the Class. Members of the Class can be identified through Defendants' records.

92.     **Typicality**: Plaintiff's claims are typical of the claims of other members of the Class, in that Plaintiff and the Class members sustained damages arising out of Defendants' uniform wrongful conduct and unsolicited telephone texts.

93.     **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the other members of the Class. Plaintiff's claims are made in a representative capacity on behalf of the other members of the Class. Plaintiff has no interests antagonistic to the interests of the other members of the proposed Class and is subject to no unique defenses. Plaintiff has retained competent counsel to prosecute the case on behalf of Plaintiff and the proposed Class.  Plaintiff and Plaintiff's counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and have the financial resources to do so.

94.     **Policies Generally Applicable to the Class**: This class action is appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class members and making final injunctive relief appropriate with respect to the Class as a whole. Defendants' practices challenged herein apply to and affect the Class members uniformly, and Plaintiff's challenge of those practices hinge on Defendants' conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

95. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

    i.    Whether Defendants' conduct violated the TCPA;

    ii.    Whether Defendants' conduct violated the TCPA *willingly* and/or *knowingly*;

    iii.    Whether Defendants possessed express written consent prior to contacting Plaintiff and the members of the Class;

    iv.    Whether members of the Class are entitled to treble damages based on the knowingness or willfulness of Defendants' conduct.

96. **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy as joinder of all parties is impracticable. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendants' misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and

expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered, and uniformity of decisions ensured.

## CAUSE OF ACTION
Violation of 47 U.S.C. § 227(c)
Telephone Consumer Protection Act
(On behalf of Plaintiff and the Class)

97. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

98. Capital Projects, Reinartson, and John Doe sent texts to Plaintiff's and the Class members' telephones.

99. Defendants did not have consent to send such texts.

100. Defendants' texts were sent for a commercial purpose.

101. Plaintiff and the class were registered on the Do Not Call list.

102. Defendants' failed to maintain and train on written telemarketing policies.

103. As a result of its unlawful conduct, Defendants repeatedly invaded Plaintiff's and the Class's personal privacy.

104. Plaintiff incurred actual damages in the form of annoyance, wasted time, and wasted cell phone battery.

105. Plaintiff and the class seek statutory damages.

## SECOND CAUSE OF ACTION
Unlawful Prong of California Unfair Competition Law
Cal. Bus. & Prof. Code §17200
(on behalf of Plaintiff and the Class)

106. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

107. The unlawful prong of California Business and Professions Code §17200 prohibits any unlawful business practice.

108. Each of Defendants' violations of 47 U.S.C. § 227(c) vis a vis Plaintiff as described herein all constitute separate and cumulative violations of unlawful prong of §17200.

109. Plaintiff has incurred actual damages in the form of annoyance, wasted time, and wasted cell phone battery.

110. Plaintiff is authorized to pursue a private right of action against Defendants under §17204.

111. Plaintiff is entitled to injunctive relief.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff THANE CHARMAN, individually and on behalf of the Class, prays for the following relief:

A. An order certifying the Class as defined above, appointing Plaintiff as the Class representative and appointing Plaintiff's counsel as Class Counsel;

B. An order declaring that Defendants' actions, as set out above, violate the TCPA;

C. An order declaring that Defendants' actions, as set out above, violate the TCPA *willfully* and *knowingly*;

D. An order declaring that Defendants' actions, as set out above, violate the unlawful prong of Cal. Cal. Bus. & Prof. Code §17200;

E. An injunction requiring Defendants to cease all unlawful texts without first obtaining the recipient's express written consent to receive such texts, and otherwise protecting interests of the Class;

F. An award of statutory damages;

G. An award of attorney's fees and costs pursuant to Cal. Civ. Proc. Code §1021.5; and

H. Such other and further relief that the Court deems reasonable and just.

Dated: August 16, 2022          Respectfully submitted,
                                JAVITCH LAW OFFICE

                          By:   /s/ Mark L. Javitch
                                Mark L. Javitch (California SBN 323729)
                                3 East 3rd Ave. Ste. 200
                                San Mateo CA 94401
                                Tel: (650) 781-8000
                                Fax: (650) 648-0705

                                Attorney for Plaintiff THANE CHARMAN
                                *and the Putative Class*